**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| James T. Muncy, Jr., | : | |
| | : | |
| -and- | : | |
| | : | |
| Christine Wheeler | : | |
| | : | |
|     Individually and on behalf of | : | Civil Action No. 2:19-cv-3324 |
|     other members of the general | : | |
|     public similarly situated, | : | Judge |
| | : | |
| | : | Magistrate Judge |
|     Plaintiffs, | : | |
| | : | **JURY DEMAND ENDORSED HEREON** |
|     v. | : | |
| | : | |
| Hound Dogs Towing and Recovery | : | |
| 2918 Parsons Ave., | : | |
| Columbus, Ohio 43207 | : | |
| | : | |
| -and- | : | |
| | : | |
| Josh Ingold | : | |
| d/b/a/ Hound Dogs Towing and | : | |
| Recovery | : | |
| 2918 Parsons Ave., | : | |
| Columbus, Ohio 43207 | : | |
| | : | |
|     Defendants. | : | |

## COLLECTIVE AND CLASS ACTION COMPLAINT

James T. Muncy, Jr. ("Plaintiff Muncy") and Christine Wheeler ("Plaintiff Wheeler") (collectively, "Plaintiffs" or "Named Plaintiffs") bring this action individually and on behalf of all current and former employees (hereinafter "Plaintiffs and the Putative Class Members") who worked for Hound Dogs Towing and Recovery ("HDTR") and/or Josh Ingold ("Ingold") (collectively, HDTR and Ingold will be referred to as "Defendants") as "independent contractors" and were paid hourly but no overtime from three years preceding the filing of the Complaint and

through the final disposition of this matter, seeking all available relief, including compensation, liquidated damages, attorneys' fees, and costs, pursuant the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, pursuant to Ohio's Minimum Fair Wage Standards Act ("OMFWSA"), O.R.C. §§ 4111.01, 4111.03 and 4111.10, the Ohio Prompt Pay Act ("OPPA"), O.R.C. § 4113.15 (the OMFWSA and the OPPA will be referred to collectively as the "Ohio Acts").

Plaintiffs' FLSA claim is asserted as a collective action under Section 16(b) of the FLSA, 29 U.S.C. § 216(b), while their Ohio Acts claims are asserted as class actions under Federal Rules of Civil Procedure ("FED. R. CIV. P.") 23. The following allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

## I.     OVERVIEW

1.     This lawsuit includes a collective action pursuant to the FLSA, 29 U.S.C. §§ 201 *et. seq.*, and class actions pursuant to the Ohio Acts and FED. R. CIV. P. 23, to recover overtime wages.

2.     Named Plaintiffs and the Putative Class Members are those similarly situated persons who worked for Defendants as "independent contractors" since three years preceding the filing of this Complaint and through the final disposition of this matter, and were paid hourly for all hours worked but did not receive overtime for all hours worked over forty (40) in each workweek.

3.     Defendants are and have been, jointly and individually, "employers" as that term is defined by the FLSA, O.R.C. Chapter 4111, and Ohio Constitution Art. 2 §34a.

4.     At all times relevant to this action, Defendants have been jointly engaged in commerce or in the production of goods for commerce, and/or the business activities of Defendants constituted an enterprise engaged in commerce within the meaning of the FLSA.

5.     Upon information and belief, Defendants' joint employees were engaged in interstate commerce and Defendants had annual gross volume sales and/or business in an amount not less than $500,000.00.

6.     Defendants improperly classified Plaintiffs and the Putative Class Members as independent contractors when they should have been properly classified as employees of Defendants.

7.      Plaintiffs and the Putative Class Members routinely work (and worked) in excess of forty (40) hours per workweek but were not paid overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

8.     The decision by Defendants not to classify Plaintiffs and the Putative Class Members as employees and to pay them overtime compensation was neither reasonable nor in good faith.

9.     Defendants knowingly and deliberately failed to compensate Plaintiffs and the Putative Class Members overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek due to their misclassification.

10.     Plaintiffs and the Putative Class Members did not and currently do not perform work that meets the definition of exempt work under the FLSA or the Ohio Acts.

11.     Plaintiffs and the Putative Class Members therefore seek to recover all unpaid overtime and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. §

216(b), and to recover all unpaid overtime and other damages owed under the Ohio Acts as class actions pursuant to FED. R. CIV. P. 23.

12.     Plaintiffs pray that all similarly situated workers (Putative Class Members) be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit.

13.     Plaintiffs also pray that the Rule 23 classes are certified as defined herein, and the Plaintiffs be designated as Class Representatives.

## II.     JURISDICTION & VENUE

14.     This Court has subject matter jurisdiction over the FLSA claim pursuant to 28 U.S.C. § 1331 as this is an action arising under 29 U.S.C. §§ 201 *et. seq*.

15.     This Court has supplemental jurisdiction over the Ohio Acts claims pursuant to 28 U.S.C. § 1367.

16.     This Court has personal jurisdiction over Defendants because the cause of action arose within this District as a result of Defendants' conduct within this District.

17.     Venue is proper in the Southern District of Ohio because this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

18.     Specifically, Defendants have maintained a working presence throughout this District and Division.

19.     Venue is proper in this this District pursuant to 28 U.S.C. § 1391.

## III.     THE PARTIES

20.     Plaintiff James T. Muncy, Jr. worked for Defendants within the meaning of the FLSA and the Ohio Acts within this judicial district and within the relevant three-year period.

Plaintiff Muncy did not receive overtime compensation for all hours worked in excess of forty (40) hours per workweek.[1]

21.     Plaintiff Christine Wheeler worked for Defendants within the meaning of the FLSA and the Ohio Acts within this judicial district and within the relevant three-year period. Plaintiff Wheeler did not receive overtime compensation for all hours worked in excess of forty (40) hours per workweek.[2]

22.     The Putative Class Members include those current and former employees who worked for Defendants since three years preceding the filing of this Complaint and have been subjected to the same illegal pay system under which Plaintiffs worked and were paid. The Putative Class Members include: the FLSA Collective Members, as defined below, who worked in Ohio.

23.     HDTR is trade name registered with the Ohio Secretary of State by Defendant Ingold who operates HDTR as a towing and transportation of vehicles business located at 2918 Parsons Ave., Columbus, Ohio, 43207.

24.     Upon information and belief, Defendant Ingold is an individual, a United States Citizen, and a resident of the State of Ohio.

25.     Upon information and belief, Defendant Ingold is the owner of the business that he operates under the HDTR trade name registered to him in his individual capacity.

26.     During relevant times, Defendant Ingold, as the owner and operator of HDTR, has had operational control over significant aspects of the day-to-day functions of Defendant HDTR, including the day-to-day functions of Plaintiffs and similarly situated employees.

27.     During relevant times, Defendant Ingold has had the authority to hire, fire and discipline employees, including Plaintiffs and similarly situated employees.

---

[1] The written consent of Plaintiff Muncy is attached hereto as Exhibit "A."
[2] The written consent of Plaintiff Wheeler is attached hereto as Exhibit "B."

28.     During relevant times, Defendant Ingold has had the authority to set rates and methods of compensation of Plaintiffs and similarly situated employees.

29.     During relevant times, Defendant Ingold has had the authority to control the work schedule and employment conditions of Plaintiffs and similarly situated employees.

30.     During relevant times, Defendant Ingold has had ultimate authority and control of employment records.

31.     During relevant times, Defendants Ingold and HDTR have mutually benefitted from the work performed by Plaintiffs and similarly situated employees.

32.     During relevant times, Defendants have not acted entirely independently of each other and have not been completely disassociated with respect to Plaintiffs and similarly situated employees.

33.     During relevant times, Defendants shared the services of Plaintiffs and similarly situated employees.

34.     During relevant times, Defendants acted directly or indirectly in the interest of each other in relation to Plaintiffs and similarly situated employees.

35.     Upon information and belief, Defendants, at all times relevant hereto, were fully aware of the fact that they are legally required to comply with the wage and overtime payment laws of the United States and of the State of Ohio as well as recordkeeping laws of the State of Ohio.

36.     During relevant times, Defendants had knowledge of and acted willfully in regard to their conduct described herein.

## IV.     ADDITIONAL FACTS

37. HDTR claims to provide "the best service to get you and your vehicle where it needs to go, no matter what the situation may be" and "consignment towing to car dealerships in need of dealer swaps or car delivery to customers" amount various other services more fully described on its website.[3]

38. HDTR lists its office address as 2918 Parsons Avenue, Columbus, Ohio, 43207.[4]

39. To provide their services, Defendants employed numerous workers—including Plaintiffs and the individuals who make up the putative or potential class, but misclassified such workers as "independent contractors".

40. Despite Defendants' misclassification of them as independent contractors, Plaintiffs and the Putative Class Members should have been classified by Defendants as employees and paid accordingly.

41. Specifically, Defendants employed numerous workers such as Plaintiffs and the Putative Class Members as tow truck drivers throughout Ohio.

42. On Defendants' website, they state that "Hound Dog's Towing & Recovery currently has two positions available for experience two truck drivers."[5]

43. The website posting further states "This is a full time position with competitive wages."[6]

44. The posting for the two (2) open tow truck driver positions additionally provides the "Job Requirements" as follows:

- Must have an excellent driving record.
- Must be 25 years of age or older.
- Must be willing and able to work long hours when needed

---

[3] http://www.hounddogstowing.com, last visited July 10, 2019.

[4] *See* fn. 2. at "Location".
[5] *See* fn. 2. at "Careers".
[6] *Id.*

- Must have own transportation to get back and forth to our office.
- Must be dependable with previous towing experience.
- Must be able to pass a DOT physical and drug test.
- Must be a people person and must have a clean, professional appearance and attitude.

We are looking for people that are interested in a long term career. We are a fast growing company and are seeking individuals that can help our company grow and succeed. Interested applicants can call Josh at 614-462-0729 or fill out an application below.

### *Plaintiff Muncy*

45.     Plaintiff Muncy worked for Defendants as a tow truck driver from approximately December 2018 until April 2019.

46.     During this time, Plaintiff Muncy exclusively worked for Defendants as a tow truck driver.

47.     Plaintiff Muncy's normal working hours for Defendants were 9:00 am to 6:00 pm Monday through Friday, but he often worked longer hours.

48.     Upon his arrival and departure each day, Plaintiff Muncy clocked in and out each day and exclusively drove for Defendants throughout each workweek.

49.     Plaintiff Muncy was paid $15 per hour for all hours worked each week, including those over forty (40) per week, for Defendants as a result of their misclassification of Plaintiff Muncy and the Putative Class Members as independent contractor tow truck drivers.

50.     Plaintiff Muncy and the Putative Class Members' primary job duties included providing tow truck driving and related services as directed by Defendants throughout Ohio.

51.     Upon information and belief, Plaintiff Muncy and the Putative Class Members conducted their day-to-day activities within mandatory and designed parameters and in accordance with pre-determined operational plans created by Defendants, including but not limited to driving tow trucks and using other equipment owned by Defendants, working the schedules assigned by

Defendants, working in a manner as directed by Defendants, and wearing clothing with Defendants' logos and business name as required by Defendants.

52.     Plaintiff Muncy and the Putative Class Members were prohibited from varying their job duties outside of the predetermined parameters.

53.     Moreover, Plaintiff Muncy and the Putative Class Members' job functions were primarily routine and manual labor in nature, requiring little to no official training, much less a college education or other advanced degree.

54.     Although it is well-known that workers like Plaintiff Muncy and the Putative Class Members are not exempt from overtime, Defendants did not pay Plaintiff Muncy and the Putative Class Members the additional overtime premium required by the FLSA for hours worked in excess of forty (40) in a workweek.

### *Plaintiff Wheeler*

55.     Plaintiff Wheeler worked for Defendants as a tow truck driver from approximately August 2018 until February 2019.

56.     During this time, Plaintiff Wheeler exclusively worked for Defendants as a tow truck driver.

57.     Plaintiff Wheeler's normal working hours for Defendants were 9:00 am to 8:00 pm Monday through Friday, but she often worked longer hours.

58.     Upon her arrival and departure each day, Plaintiff Wheeler clocked in and out each day and exclusively drove for Defendants throughout each workweek.

59.     Plaintiff Wheeler was paid $15 per hour for all hours worked each week, including those over forty (40) per week, for Defendants as a result of their misclassification of Plaintiff

Wheeler and the Putative Class Members as independent contractor tow truck drivers for Defendants.

60.     Plaintiff Wheeler and the Putative Class Members' primary job duties included providing tow truck driving and related services as directed by Defendants throughout Ohio.

61.     Upon information and belief, Plaintiff Wheeler and the Putative Class Members conducted their day-to-day activities within mandatory and designed parameters and in accordance with pre-determined operational plans created by Defendants, including but not limited to driving tow trucks and using other equipment owned by Defendants, working the schedules assigned by Defendants, working in a manner as directed by Defendants, and wearing clothing with Defendants' logos and business name as required by Defendants.

62.     Plaintiff Wheeler and the Putative Class Members were prohibited from varying their job duties outside of the predetermined parameters.

63.     Moreover, Plaintiff Wheeler and the Putative Class Members' job functions were primarily routine and manual labor in nature, requiring little to no official training, much less a college education or other advanced degree.

64.     Although it is well-known that workers like Plaintiff Wheeler and the Putative Class Members are not exempt from overtime, Defendants did not pay Plaintiff Wheeler and the Putative Class Members the additional overtime premium required by the FLSA for hours worked in excess of forty (40) in a workweek.

65.     Plaintiffs and the Putative Class Members' duties did not (and currently do not) include managerial responsibilities or the exercise of independent discretion or judgment.

66. Plaintiffs and the Putative Class Members did not (and currently do not) have the authority to hire or fire other employees, and they were not (and currently are not) responsible for making hiring or firing recommendations.

67. Moreover, Plaintiffs and the Putative Class Members did not (and currently do not) supervise two or more employees.

68. Plaintiffs and the Putative Class Members' duties did not (and currently do not) concern work directly related to the management or general business operations of Defendants.

69. Defendants determined the hours Plaintiffs and the Putative Class Members worked.

70. Defendants set Plaintiffs and the Putative Class Members' pay and controlled the number of hours they worked.

71. Defendants set all employment-related policies applicable to Plaintiffs and the Putative Class Members.

72. Defendants maintained control over pricing and marketing.

73. Defendants owned and/or controlled the equipment and supplies that Plaintiffs and the Putative Class Members used to perform their work, including but not limited to the tow trucks they drove to perform their work for Defendants.

74. Defendants required Plaintiffs and the Putative Class Members to clock in and out at the beginning and ends of their work shifts and/or on lunch breaks, and paid them by the hour for the work they performed for Defendants.

75. Defendants had the power to hire and fire Plaintiffs and the Putative Class Members.

76.     Defendants demanded Plaintiffs and the Putative Class Members wear Defendants' clothing while working for Defendants.

77.     Defendants made all personnel and payroll decisions with respect to Plaintiffs and the Putative Class Members, including but not limited to, the decision to pay Plaintiffs and the Putative Class Members an hourly wage with no overtime pay.

78.     Plaintiffs and the Putative Class Members did not employ their own workers.

79.     Plaintiffs and the Putative Class Members worked continuously for Defendants on a permanent full-time basis.

80.     Defendants, instead of Plaintiffs and the Putative Class Members, made the large capital investments in vehicles, buildings, equipment, tools, and supplies. Moreover, Defendants paid operating expenses like rent, payroll, marketing, insurance, and bills.

81.     Plaintiffs and the Putative Class Members relied on Defendants for their work. Plaintiffs and the Putative Class Members did not market any business or services of their own.

82.      Instead, Plaintiffs and the Putative Class Members worked the hours assigned by Defendants, performed duties assigned by Defendants, worked on projects assigned by Defendants, and worked for the benefit of Defendants and its customers.

83.     Defendants paid Plaintiffs and the Putative Class Members on a weekly basis. Plaintiffs and the Putative Class Members did not earn a profit based on any business investment of their own. Rather, Plaintiffs and the Putative Class Members' only earning opportunity was based on the **number of hours** they were allowed to work, which was controlled by Defendants.

84.     Defendants improperly classified Plaintiffs and the Putative Class Members as independent contractors. The classification was improper because Plaintiffs and the Putative Class

Members were not in business for themselves. Instead, they were economically dependent upon Defendants for their work.

85. Plaintiffs and the Putative Class Members' duties did not (and currently do not) include managerial responsibilities or the exercise of independent discretion or judgment.

86. The FLSA and the Ohio Acts mandate that overtime be paid at one and one-half times an employee's regular rate of pay.

87. Under the Ohio Acts overtime shall be paid in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the FLSA. O.R.C. § 4111.03(A).

88. Defendants denied Plaintiffs and the Putative Class Members overtime pay as a result of a widely applicable, illegal pay practice. Plaintiffs and the Putative Class Members regularly worked in excess of forty (40) hours per week but never received overtime compensation.

89. Defendants applied this pay practice despite clear and controlling law that states that the tow truck driving services which were performed by Plaintiffs and the Putative Class Members exclusively in the State of Ohio and for Defendants' benefit consisted of ***non-exempt*** work.

90. Accordingly, Defendants' pay policies and practices blatantly violated (and continue to violate) the FLSA and the Ohio Acts.

## V. CAUSES OF ACTION

### COUNT ONE
**(Collective Action Alleging FLSA Violations)**

### A. FLSA COVERAGE

91. All previous paragraphs are incorporated as though fully set forth herein.

92. The FLSA Collective is defined as:

**ALL CURRENT AND FORMER EMPLOYEES WHO WORKED AS A TOW TRUCK DRIVER FOR HOUND DOG'S TOWING & RECOVERY AS AN "INDEPENDENT CONTRACTOR" AT ANY TIME FROM THREE YEARS PRECEDING THE FILING OF THIS CASE THROUGH THE FINAL DISPOSITION OF THIS CASE, AND WERE PAID HOURLY BUT DID NOT RECEIVE OVERTIME FOR HOURS WORKED OVER FORTY IN ANY WORKWEEK ("FLSA Collective" or "FLSA Collective Members").**

93.     At all times hereinafter mentioned, Defendants have been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

94.     At all times hereinafter mentioned, Defendants have been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

95.     At all times hereinafter mentioned, Defendants have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that those enterprises have had, and have, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

96.     During the respective periods of Plaintiffs and the FLSA Collective Members' employment by Defendants, these individuals provided services for Defendants that involved interstate commerce for purposes of the FLSA.

97.     In performing the operations hereinabove described, Plaintiffs and the FLSA Collective Members were engaged in commerce or in the production of goods for commerce within the meaning of the FLSA.

98.     Specifically, Plaintiffs and the FLSA Collective Members are (or were) **_non-exempt_** employees who worked for Defendants and were engaged in towing and tow truck driving services that were directly essential to the production and/or transportation of goods for Defendants. 29 U.S.C. § 203(j).

99.     At all times hereinafter mentioned, Plaintiffs and the FLSA Collective Members are (or were) individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

100.    In violating the FLSA, Defendants acted willfully, without a good faith basis and with reckless disregard of applicable federal law.

101.    The proposed collective of similarly situated employees, i.e. putative collective members sought to be certified pursuant to 29 U.S.C. § 216(b), is defined above.

102.    The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Defendants.

**B.      FAILURE TO PAY WAGES IN ACCORDANCE WITH THE FLSA**

103.    All previous paragraphs are incorporated as though fully set forth herein.

104.    Defendants violated provisions of Sections 7 and 15 of the FLSA, 29 U.S.C. §§ 207, and 215(a)(2) by employing individuals in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such employees for hours worked in excess of forty (40) hours per week at rates at least one and one-half times the regular rates.

105.    Plaintiffs and the FLSA Collective Members have suffered damages and continue to suffer damages as a result of Defendants' acts or omissions as described herein; though Defendants are in possession and control of necessary documents and information from which

Plaintiffs would be able to precisely calculate damages.

106.    Moreover, Defendants knowingly, willfully and in reckless disregard carried out its illegal pattern of failing to pay Plaintiffs and other similarly situated employees overtime compensation.

107.    Defendants knew or should have known its pay practices were in violation of the FLSA.

108.    Defendants are sophisticated parties and employers, and therefore knew (or should have known) their policies were in violation of the FLSA.

109.    Plaintiffs and the FLSA Collective Members, on the other hand, are (and were) unsophisticated laborers/drivers who trusted Defendants to pay overtime in accordance with the law.

110.    The decision and practice by Defendants to not pay overtime was neither reasonable nor in good faith.

111.    Accordingly, Plaintiffs and the Putative Class Members are entitled to overtime wages for all hours worked in excess of forty (40) in a workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

## C.    FLSA COLLECTIVE ACTION ALLEGATIONS

112.    All previous paragraphs are incorporated as though fully set forth herein.

113.    Pursuant to 29 U.S.C. § 216(b), this collective claim is made on behalf of all those who are (or were) similarly situated to Plaintiffs.

114.    Other similarly situated employees have been victimized by Defendants' patterns, practices, and policies, which are in willful violation of the FLSA.

115. The FLSA Collective Members are defined above.

116. Defendants' failure to pay any overtime compensation results from generally applicable policies and practices, and does not depend on the personal circumstances of the individual FLSA Collective Members.

117. Thus, Plaintiffs' experiences are typical of the experiences of the FLSA Collective Members.

118. The specific job titles or precise job requirements of the various FLSA Collective Members does not prevent collective treatment.

119. All of the FLSA Collective Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be properly compensated for all hours worked in excess of forty (40) hours per workweek.

120. Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts. Indeed, the FLSA Collective Members are workers entitled to overtime after forty (40) hours in a week.

121. Defendants employed a substantial number of similarly situated workers since three years preceding the filing of this Complaint. Upon information and belief, these workers are geographically dispersed, residing and working in locations across Ohio.

122. Absent a collective action, many members of the proposed FLSA collective likely will not obtain redress of their injuries and Defendants will retain the proceeds of its rampant violations.

123. Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

124.    Accordingly, the FLSA collective of similarly situated plaintiffs should be certified as defined above and notice should be promptly sent.

## COUNT TWO
**(Class Action Alleging Violations of the Ohio Acts)**

**A.    OHIO ACTS COVERAGE**

125.    All previous paragraphs are incorporated as though fully set forth herein.

126.    The Ohio Acts Class is defined as:

**ALL CURRENT AND FORMER OHIO EMPLOYEES WHO WORKED AS A TOW TRUCK DRIVER FOR HOUND DOG'S TOWING & RECOVERY AS AN "INDEPENDENT CONTRACTOR" AT ANY TIME FROM THREE YEARS PRECEDING THE FILING OF THIS CASE THROUGH THE FINAL DISPOSITION OF THIS CASE, AND WERE PAID HOURLY BUT DID NOT RECEIVE OVERTIME FOR HOURS WORKED OVER FORTY IN ANY WORKWEEK ("Ohio Acts Class" or "Ohio Acts Class Members").**

127.    At all times hereinafter mentioned, Defendants have been an employer within the meaning of the OMFWSA, O.R.C. § 4111.03(D)(2).

128.    At all times hereinafter mentioned, Plaintiffs and the Ohio Acts Class members have been employees within the meaning of the OMFWSA, O.R.C. § 4111.03(D)(3).

129.    Plaintiffs and the Ohio Acts Class Members were or have been employed by Defendants since three years preceding the filing of this Complaint, and have been covered employees entitled to the protections of the Ohio Acts and were not exempt from the protections of the Ohio Acts.

130.    Defendants are not exempt from paying overtime benefits under the Ohio Acts.

**B.    FAILURE TO PAY WAGES IN ACCORDANCE WITH THE OHIO ACTS**

131.    All previous paragraphs are incorporated as though fully set forth herein.

132.    The OMFWSA requires that employees, including Plaintiffs and the Ohio Acts Class Members receive "time and one-half" overtime premium compensation for hours worked over forty (40) per week.

133.    The OPPA requires that Defendants pay Plaintiffs and the Ohio Acts Class Members all wages, including unpaid overtime, on or before the first day of each month, for wages earned by her during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned by her during the last half of the preceding calendar month.

134.    Plaintiffs and the Ohio Acts Class Members were or have been employed by Defendants since three years preceding the filing of this Complaint, and have been covered employees entitled to the protections of the Ohio Acts.

135.    Defendants are employers covered by the requirements set forth in the Ohio Acts.

136.    Plaintiffs and other Ohio Acts Class Members have not been exempt from receiving overtime benefits under the Ohio Acts.

137.    Plaintiffs and the Ohio Acts Class Members worked more than forty (40) hours in workweeks during times relevant to this case, however, Defendants violated the Ohio Acts by failing to pay Plaintiffs and other Ohio Acts Class Members any overtime premium for hours worked over 40 per week.

138.    Plaintiffs and the Ohio Acts Class Members were not paid all wages, including overtime wages at one and one-half times their regular rates within thirty (30) days of performing the work.

139.    The wages of Plaintiffs and the Ohio Acts Class Members remain unpaid for more than thirty (30) days beyond their regularly scheduled payday.

140.    Plaintiffs and the Ohio Acts Class Members have suffered damages and continue to suffer damages as a result of Defendants' acts or omissions as described herein; though Defendants are in possession and control of necessary documents and information from which Plaintiffs would be able to precisely calculate damages

141.    In violating the Ohio Acts, Defendants acted willfully, without a good faith basis, and with reckless disregard of applicable Ohio law.

142.    The proposed class of employees, i.e. putative class members sought to be certified pursuant to the Ohio Acts, is defined above.

143.    The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Defendants.

## C.    OHIO ACTS CLASS ALLEGATIONS

144.    All previous paragraphs are incorporated as though fully set forth herein.

145.    Plaintiffs bring their Ohio Acts claims as class actions pursuant to Federal Rule of Civil Procedure 23 on behalf of all similarly situated individuals employed by Defendants to work in Ohio since three years preceding the filing of this Complaint.

146.    Class action treatment of Plaintiffs' Ohio Acts claim is appropriate because, as alleged below, all of Federal Rule of Civil Procedure 23's class action requisites are satisfied.

147.    The number of Ohio Acts Members is so numerous that joinder of all class members is impracticable.

148.    Plaintiffs are members of the Ohio Acts Class, their claims are typical of the claims of other Ohio Acts Class Members, and they have no interests that are antagonistic to or in conflict with the interests of other class members.

149.    Plaintiffs and their counsel will fairly and adequately represent the Ohio Acts Class Members and their interests.

150.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

151.    Accordingly, the Ohio Acts Class should be certified as defined above.

## VI.    RELIEF SOUGHT

Plaintiffs respectfully pray for judgment against Defendants as follows:

a.    For an Order recognizing this proceeding as a collective action pursuant to Section 216(b) of the FLSA, certifying the FLSA Collective and requiring Defendants to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all potential collective action members;

b.    For an Order certifying the Ohio Acts Class and designating Plaintiffs as Representatives of the Ohio Acts Class;

c.    For an Order approving the form and content of a notice to be sent to all potential FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

d.    For an Order awarding Plaintiffs (and those FLSA Collective Members who have joined in the suit) back wages that have been improperly withheld;

e.    For an Order pursuant to Section 16(b) of the FLSA finding Defendants jointly and severally liable for unpaid back wages due to Plaintiffs (and those FLSA Collective Members who have joined in the suit), for liquidated damages equal in amount to the unpaid compensation found

due to Plaintiffs (and those FLSA Collective Members who have joined in the suit), and for attorneys' fees and costs;

f.      For an Order pursuant to the Ohio Acts awarding Plaintiffs and the Ohio Acts Class Members unpaid overtime and other damages allowed by law;

g.      For an Order awarding the costs and expenses of this action;

h.      For an Order awarding attorneys' fees;

i.      For an Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law;

j.      For an Order awarding Plaintiffs service awards as permitted by law;

k.      For an Order compelling the accounting of the books and records of Defendants, at Defendants' own expense;

l.      For an Order against Defendants for liquidated damages pursuant to the OPPA in an amount equal to six percent (6%) of all unpaid overtime compensation owed to Plaintiffs and the Ohio Acts Class Members during the applicable statutory period; and

m.      For an Order providing for injunctive relief prohibiting Defendants from engaging in future violations of the FLSA, the Ohio Acts, and requiring Defendants to comply with such laws going forward; and

n.      For an Order granting such other and further relief as may be necessary and appropriate.


                              Respectfully submitted,

                              */s/ Matthew J.P. Coffman*
                              Matthew J.P. Coffman (0085586)
                              *Trial Counsel*
                              **COFFMAN LEGAL, LLC**

1550 Old Henderson Rd.
Suite 126
Columbus, Ohio 43220
Phone: 614-949-1181
Fax: 614-386-9964
Email: mcoffman@mcoffmanlegal.com

*/s/ Peter Contreras*
Peter Contreras (0087530)
**CONTRERAS LAW, LLC**
1550 Old Henderson Rd.
Suite 126
Columbus, Ohio 43220
Phone: 614-787-4878
Fax: 614-957-7515
Email: peter.contreras@contrerasfirm.com

*Attorneys for Named Plaintiffs and those similarly situated*

## **JURY DEMAND**

Plaintiffs request a trial by a jury of twelve (12) persons.

*/s/ Matthew J.P. Coffman*
Matthew J.P. Coffman